## GILKEN CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10777.

United States Court of Appeals
Sixth Circuit.
July 14, 1949.

Frank W. Donovan, Detroit, Mich. (Frank W. Donovan, Detroit, Michigan, on the brief), for petitioner.

Irving I. Axelrad, Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, Irving I. Axelrad, Washington, D. C., on the brief), for respondent.

Before HICKS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The United States Tax Court decided against the petitioner, a Michigan corporation, on both issues presented for review. It was held (1) that real and personal property taxes assessed on April 1, 1940, before petitioner acquired title to, or possession of, Detroit property, were under Michigan law the personal liability of petitioner's vendor and that therefore payments made by petitioner in discharge of such taxes were not deductible by it for income tax purposes.

The tax court held further (2) that $8,200 received by the taxpayer from its lessee, as advanced rental, security for performance of the covenants of the lease, and as a part of the purchase price of the leased property should lessee exercise its option under the lease to buy at a stipulated price, was income when received. On the first proposition, the decision of the

tax court was unanimous, but on the second there were three dissenting judges.

The relevant facts will be briefly surveyed. The petitioner was organized on August 4, 1939, as a corporation under Michigan law. On February 27, 1940, petitioner offered by letter to purchase an apartment hotel situated in Detroit for $115,000 of which $2,000 was payable with the offer and the balance upon closing; and stipulated for the delivery of a good merchantable title, free of all encumbrances of every character. The offer required acceptance by a trustee, subject to the approval of the beneficiaries of the trust, by March 6, 1940. The trustee was required to deliver an abstract of title; and a term of sixty days was provided for correction of any defect in the title.

This offer was accepted, with modifications, by the trustee for the owners by letter of March 2, 1940. The modifications proposed that inasmuch as ninety days' notice would be required for cancellation of an existing lease, the vendor should have 120 days for final closing. Consent to the modifications was endorsed on this letter by a representative of the petitioner which had, at an earlier date around February 1, 1940, made arrangements for a loan on the apartment hotel and its furnishings, subject to the making of certain improvements, to approval of the petitioner's title, and to closing within sixty days.

On June 1, 1940, petitioner was delivered a deed for and possession of the apartment hotel property. After acquisition of the title, petitioner secured its mortgage loan pursuant to the earlier arrangements.

On July 10, 1940, petitioner leased the apartment hotel property, together with all the personal property appertaining thereto, for a term of ten years to Prodanov. The lease provided for a total rental of $192,-000, payable in monthly instalments of $1,-600 each; that the lessee should keep the premises and the personal property thereon in good condition; that he would pay water rates and other public utility charges and deliver receipts therefor to the lessor; that he would carry public liability insurance in such amounts and with such insurers as would be satisfactory to the lessor, and

fire insurance payable to the lessor, or the lessee, as each interest should appear; that he would make repairs and improvements, decoration and rehabilitation required by the mortgage; and that he would pay $500 per month for a $6,000 unpaid balance of the purchase price of certain carpets on the premises.

There are two controversial clauses in the case. One provided that, upon execution of the lease, the lessee deposited with the lessor $3,200, receipt of which was acknowledged, to be held by the lessor as security for the full performance by the lessee of his obligations under the lease and to be applied upon the last two months of the last year's rent accruing under the lease, provided that the lessee should not be in default of any of the terms, conditions, or covenants of the lease.

The other controversial clause is the covenant of the lease that, at any time within three years from its date, the lessee should have the option to purchase the premises with all improvements thereon, in fee simple, together with all personal property, furniture, furnishings and fixtures in use on the premises and owned by the lessor, for $125,000. The lease stipulated: "Lessor further agrees, provided the Lessee has faithfully performed all the conditions of said lease, and provided Lessee desires to exercise the option to purchase said premises as herein provided, to give credit and allow Lessee as payment upon the stipulated purchase price of One Hundred Twenty-five Thousand ($125,000.00) Dollars, the sum of Three Thousand Two Hundred ($3,200.00) Dollars, which represents a sum equal to that paid by Lessee as security and for the last two months' rental of said term; * * * This option shall terminate upon forfeiture of the lease."

Two amendments were made to the lease: the first on January 3, 1941, and the second on April 29, 1942. The first amendment recited, inter alia, that the lessee had deposited—which he actually had—$5,000 over and above the original $3,200, to be applied, along with the original deposit, upon the last five months of the last year's rent; and provided that in

the event of the exercise by lessee of his option to purchase, the $5,000 was to be credited as payment upon the price of the property in the same manner as the $3,200. The $5,000 was recited also to be additional security on the lease. It was provided, further that should the option to purchase be exercised, the price would be $300 less for each month from January 1, 1941, until exercise of the option; and that, should the lessee elect not to exercise the option on July 1, 1943, the rental would be reduced to $1,500 a month.

The second amendment provided for expiration on December 31, 1942, instead of June 30, 1950, and that the $8,200 theretofore deposited should be applied upon the payment of the rent for the last five months of the shortened term. The lease was declared to be forfeitable for non-payment of rent for one month.

(1) On July 25, 1940, and December 18, 1940, the petitioner paid in equal instalments of $2,153.38 a total of $4,306.76, general property taxes on the premises to the City of Detroit for the fiscal year July 1, 1940, to June 30, 1941, and also on June 24, 1941, paid personal property taxes to the city in the amount of $260.48 for the same period.

The tax court found that the charter of the City of Detroit "makes the tax a debt of the owner from the time of the listing of the property for assessment by the board of assessors on April 1st, and makes the tax due and payable on July 15th, on which date it becomes a lien upon the property taxed." The tax court found further as a fact that the $8,200 included in the petitioner's gross income in its income tax return for the taxable year ending July 31, 1942, was paid to the petitioner as rent.

In our opinion, the tax court correctly decided the case upon both propositions.

Section 23(c) (1) of the Internal Revenue Code, 26 U.S.C.A. § 23(c) (1), allows, in the compilation of net income, the deduction of taxes paid or accrued within the taxable year; but in Treasury Regulations 103 promulgated under the Internal Revenue Code, it is provided: "In general taxes are deductible only by the person upon whom they are imposed." This regulation was approved in the opinion of the Supreme Court in Magruder, Collector of Internal Revenue v. Supplee, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555, wherein it was pointed out that the general principle for determining whether a payment satisfying a tax liability is a "tax paid" within the meaning of section 23(c) is supplied by the Treasury Regulation just quoted. It was held further that resort must be had to the laws of the state and city wherein the property is situated to determine upon whom the state and city real estate taxes have been imposed. The decision of this court in Walsh-McGuire Co. v. Commissioner, 6 Cir., 97 F.2d 983, 984, was cited in support of the statement. The Supreme Court said, 316 U.S. at page 398, 62 S.Ct. at page 1165: "Furthermore, respondents paid taxes for which their vendors were personally liable. This was clearly the payment of a tax imposed upon another and therefore not deductible by respondents." Walsh-McGuire Co. v. Commissioner, supra, was then cited for the third time in the opinion.

In the Walsh-McGuire case, supra, this court held that, under Ohio law, while taxes are levied and assessed upon realty they are also a personal obligation of the owner of the real estate; and that, when paid to discharge the obligation of the taxpayer's predecessor in title, they are not deductible for income tax purposes. We think that, under the law of Michigan, the taxes paid by petitioner were likewise a personal obligation of its predecessor in title and are therefore, under federal law, not deductible for income tax purposes.

We are concerned here with Detroit real and personal property taxes and must therefore look to the charter of that city. Under the charter of the City of Detroit [January 1, 1938, Ed.], it is provided in chapter 2, section 4, that the assessment rolls will be completed on the first of April of each year; and, in section 7, it is declared that "all city taxes shall become a debt against the owner from the time of the listing of property for assessment by the board of assessors." A similar pro-

vision will be found in chapter 4, section 27, of the city charter.

■ On the crucial date, April 1, 1940, the petitioner was neither the record title owner nor the occupant of the property involved. It was therefore not personally liable for the taxes, but its predecessor in title was personally liable. We cannot accept as valid the argument of petitioner that Michigan realty taxes are exclusively in rem and that there is no personal liability for them. We think the contrary to be true. In Gulf Refining Company v. Perry, 303 Mich. 487, 6 N.W.2d 756, the Supreme Court of Michigan held that an assessment for taxes on realty under the general property tax law of Michigan is a debt due to the city in which the property is located from the party in whose name the property is assessed.

City of Detroit v. Jepp, 52 Mich. 458, 18 N.W. 217, and like cases cited by petitioner go no farther, we think, upon the point at issue than to hold that specific remedies provided in tax statutes as the proper method of collection are exclusive. The Michigan statutory remedies which we find applicable in this case are not only in rem, but are also in personam.

Upon complete analysis of Engineering Society v. Detroit, 308 Mich. 539, 14 N.W. 2d 79, stressed by petitioner, we find nothing which gainsays the conclusion which we have reached. It would seem that decision in that case rested upon the beneficiary's possession in compliance with the statute and not upon its equitable title to the property.

We agree with the tax court's conclusion that the petitioner was not entitled to deduct the taxes paid by it and claimed to be deductible in its income tax return.

■ (2) The $8,200 received by the taxpayer during the tax years involved as advance rental, security for performance, and as part payment of the purchase price should the lessee exercise its option to buy, was paid to the taxpayer by the lessee without any restriction on the use of the money. The taxpayer was not required to hold the money in trust, or to set it apart as a separate fund in any manner

whatsoever. This brings the case within the category of the so-called claim of right principle as enunciated in North American Oil Consolidated v. Burnet, Commissioner of Internal Revenue, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, where the Supreme Court held: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." In so writing the unanimous opinion of the Supreme Court, Mr. Justice Brandeis cited the opinion of this court in Board v. Commissioner, 6 Cir., 51 F.2d 73, 75, 76.

It was pointed out in Ford v. Commissioner of Internal Revenue, 6 Cir., 51 F.2d 206, 207, that the true, normal criterion to be applied is the actual receipt and retention during the year in question of what was then considered income, and not whether the taxpayer exposed himself to possible personal liability.

In Brown v. Helvering, Commissioner of Internal Revenue, 291 U.S. 193, 199, 200, 54 S.Ct. 356, 359, 78 L.Ed. 725, the unrestricted use, enjoyment and disposition of income during the taxable year was again regarded as determinative. The Supreme Court said: "The overriding commissions were gross income of the year in which they were receivable. As to each such commission there arose the obligation—a contingent liability—to return a proportionate part in case of cancellation. But the mere fact that some portion of it might have to be refunded in some future year in the event of cancellation or reinsurance did not affect its quality as income. Compare American National Co. v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed 946. When received, the general agent's right to it was absolute. It was under no restriction, contractual or otherwise, as to its disposition, use, or enjoyment. Compare North American Oil Consolidated v. Burnet, 286 U.S. 417–424, 52 S.Ct. 613, 76 L.Ed. 1197 * * * Except as otherwise specifically provided by

statute, a liability does not accrue as long as it remains contingent."

In Detroit Consolidated Theatres, Inc. v. Commissioner of Internal Revenue, 6 Cir., 133 F.2d 200, this court, in a per curiam opinion, affirmed the decision of the tax court against a petitioning taxpayer. The contention of the taxpayer, as appears from the opinion of the tax court, was that a sum received by it during the taxable year from a lessee as an advance rental deposit under the terms of a lease was not to be included in gross income for that year, for the reason that under certain contingencies the money received by the lessor might have to be paid back to the lessee and might never be applied to the particular payment of rent due for the last six months of the terms of the leases. In the affirming opinion, it was made manifest that the lack of restriction on the taxpayer as to the disposition, use, or enjoyment of the advance rental deposit brought the case within the rule of Brown v. Helvering and North American Oil Consolidated v. Burnet.

It was asserted in First Nat. Bank v. Commissioner of Internal Revenue, 6 Cir., 107 F.2d 141, 142, that on the strength of the two foregoing opinions of the Supreme Court it is settled law that if a taxpayer derives a profit without restriction as to its disposition, it is income even though there is a contingency which may require him to restore its equivalent in a later year.

As recently as March 28, 1949, this court again applied the principle of North American Oil Consolidated v. Burnet, supra, and cited as following that highest authority numerous decisions of various United States Courts of Appeals, including the Second, Fourth, Fifth, Sixth, Seventh, Ninth and Tenth Circuits, and the Court of Appeals for the District of Columbia.

In view of the fact that this particular court of appeals many years ago was a pioneer in the establishment of the claim of right doctrine, subsequently approved by the Supreme Court, and has steadfastly adhered to the principle so well expressed by Mr. Justice Brandeis, we see no oc-

casion for elaboration by discussing and distinguishing the cases which have been cited by petitioner. All of them have been duly considered, but have not been found convincing in support of its position.

Here, the taxpayer had the free and unrestricted use, enjoyment and disposition of the advance rental payments during the taxable years in which received, and was required to return no part of the money. Only upon the contingency of the exercise of the lessee's option to buy, or his default in performance of required conditions of the lease, would the deposits become anything other than rent. He was, therefore, not entitled to the deductions which he claimed.

The decision of the tax court is affirmed.