CITY GAS COMPANY OF FLORIDA, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8808–73, 8807–73, 8809–73.     Filed May 27, 1980.

*David W. Richmond* and *Charles J. Monahan,* for the petitioners.

*David M. Berman,* for the respondent.

FEATHERSTON, *Judge:* In these consolidated cases, respondent determined deficiencies in the following amounts:

| FYE Mar. 31— | City Gas | Dri-Gas | Dade Gas |
| --- | --- | --- | --- |
| 1963[1] | $111,458.64 | 0 | 0 |
| 1964[1] | 6,025.98 | $15,843.51 | 0 |
| 1966 | 100,693.39 | 919.46 | $79,096.24 |

---

[1]The following cases are consolidated herewith: Dri-Gas Corp., docket No. 8807–73; and Dade Gas Co. docket No. 8809–73.

| 1967 | $19,232.76 | 0 | $376.16 |
| 1968 | 19,072.12 | $1,673.38 | 0 |

[1] Respondent's determination that deposits are included in income reduced net operating losses for fiscal 1966 and 1967 which had been carried back to fiscal 1963 and 1964 and thus triggered the determined deficiencies in the earlier years.

Due to concessions by petitioners, the only issue for decision is whether amounts received from customers opening new accounts are includable in petitioners' gross income for the year of receipt.[2]

## FINDINGS OF FACT

Petitioners City Gas Co. of Florida (City Gas), Dade Gas Co. (Dade Gas), and Dri-Gas Corp. (Dri-Gas) are Florida corporations with principal offices located in Hialeah, Fla. Dade Gas and Dri-Gas are wholly owned subsidiaries of City Gas. City Gas and Dri-Gas filed their Federal income tax returns for the fiscal year ended March 31, 1968, with the Southeast Service Center, Chamblee, Ga. Petitioners filed all other Federal income tax returns for each of the years in issue with the Office of the Internal Revenue Service, Jacksonville, Fla. During the years in issue, they reported taxable income according to the accrual method of accounting.

City Gas is a regulated public utility, under the jurisdiction of the Florida Public Service Commission (FPSC) for the years 1962 through 1968, and is engaged in the business of selling natural gas to both residential and commericial customers. Dade Gas and Dri-Gas are companies engaged in the business of selling liquid propane gas to both residential and commercial customers; they have always been nonregulated. Petitioners recorded all gas as sold, for Federal income tax and financial reporting purposes, at the end of the monthly accounting period, when they were billed by their suppliers for all gas delivered to them during the month. Some of the gas recognized as sold had not yet been billed to customers.[3]

[2] Relying on sec. 481, I.R.C. 1954, respondent included in income for fiscal 1966 deposits received in earlier years which would otherwise be barred by the statute of limitations.

[3] On brief, petitioners state, however, that Dade Gas and Dri-Gas recognize income when propane already received from suppliers is loaded on delivery trucks.

Druing the years in issue, the rules of the FPSC included the following provisions:

*Rule 310-7.54* Customer Deposits

(1) Each utility may require from any customer or prospective customer a cash deposit intended to guarantee payment of bills, such deposit not to exceed ten dollars ($10.00) or an amount necessary to cover charges for service for two billing periods, whichever is greater.

\*    \*    \*    \*    \*    \*    \*

(4) The utility may provide for the return of the deposit after a reasonable period.

(5) Upon termination of service the deposit may be credited against the final account and the balance, if any, shall be returned to the customer.

The FPSC then required all electric and gas public utilities to pay a minimum of 4-percent interest on customer deposits. During the years 1962 through 1968, the FPSC prescribed the National Association of Regulatory Utility Commissioners (NA RUC) Uniform System of Accounts for use by the gas utilities under its jurisdiction. The NARUC Uniform System of Accounts applicable during those years required that deposits received by a gas company be recorded in Account 235, Customer Deposits, a current liability account.

Under Florida law as in effect during the taxable years involved, any unclaimed deposit[4] which cannot be refunded to a customer of a utility within 15 years after termination of service escheats to the State.[5]

In order to open a new account during the years in issue, new customers of any of petitioners were required to deposit an amount of money. Petitioners issued a receipt for each deposit which stated:

To be held as a deposit to secure payment of all bills for service rendered above customer. Upon discontinuance of service, or at the election of the company prior thereto, the amount of this deposit will be returned to the depositor after deducting any amounts òwed to the company.

During fiscal 1966, 1967, and 1968, a residential customer was required to deposit $15, and a commercial or industrial customer was required to deposit twice the customer's estimated monthly

---

[4]Reference to such amounts as customer deposits is not intended to convey a legal conclusion that the amounts do not constitute income.

[5]Effective Oct. 1, 1977, the escheat period was shortened to 7 years. Fla. Stat. Ann. secs. 717.05, 717.12, 717.14, 717.02(a) (1969); Fla. Stat. Ann. sec. 717.05 (1980).

bill. Customers were billed, and petitioners' income computed, without regard to the security deposits.

A customer could terminate service at any time. When a customer terminated service, petitioners billed the customer for the amount of gas used since his last billing, taxes, and for such items as turnon and turnoff charges, and charges for repairs to meters or to customer's appliances. They then applied the customer's deposit. If a credit to the customer resulted, petitioners issued a check to the customer refunding all or part of the deposit. If the customer owed a balance, the bill was then forwarded to the customer for payment.

When a customer terminated service but intended to return to the service area, he might request that petitioners retain his deposit pending his return. In such a case, the customer was required to pay all charges against his account. When a customer who terminated service had instructed petitioners to hold his deposit as a convenience because he intended to return to the service area, and subsequently requested a refund, the deposit was refunded. When a customer paid his bill in full, without application of his deposit, and did not request that petitioners retain the deposit, the deposit was refunded. Generally, deposits were credited against the final bill of the customer.

City Gas paid interest on customer deposits at a rate of 4 percent or higher in March 1966, July 1967, and July 1968, by computing the interest for each individual customer and applying it to the customer's bill. Not being subject to the jurisdiction of the FPSC, Dade Gas and Dri-Gas did not pay interest on customer deposits.

Petitioners have always treated the customer deposits received in the course of business as current liabilities for both tax reporting and financial reporting purposes. During fiscal 1966, 1967, and 1968, petitioners treated customer deposits of residential customers and of commercial and industrail customers in the same manner for all financial purposes. The deposits held by petitioners during the years in issue were not physically segregated from general corporate funds.

Before 1978, petitioners made no escheat payments because the escheat period had not expired. On March 31, 1968, petitioners held the following amounts of deposits for inactive customer accounts: City Gas—$6,357.52; Dade Gas—$5,073.24; and Dri-Gas—$1,975.06. On July 18, 1978, City Gas paid to the Florida

State Comptroller $20,700.05. This amount represents the total payments made by all three petitioners, to date, under the Florida escheat statute.

A portion of the customer deposits listed on the books of account of City Gas in fiscal 1966 were not received directly by City Gas in cash, but were liabilities incurred during the early 1960's by other gas companies and acquired and assumed by City Gas through the acquisition of these companies. Dade Gas and Dri-Gas also received deposits during the fiscal years 1961 and 1962, and 1961, 1962, and 1963, respectively, by acquisition. These customer deposits were treated in all material respects the same as the deposits received directly by petitioners.

In notices of deficiency dated September 14, 1973, respondent determined that customer deposits received by petitioners were advance payments for gas. Accordingly, he included in the income of petitioners the following amounts:

|  | 1966 | 1967 | 1968 |
|---|---|---|---|
| City Gas | [1]$598,033.94 | $72,500.52 | $71,887.46 |
| Dade Gas | [2]158,604.84 | 1,604.43 | 0 |
| Dri-Gas | [2]42,180.76 | 4,543.96 | 3,445.41 |

[1] This amount represents the difference between the balances in the customer deposits accounts on Mar. 31, 1966, and on Mar. 31, 1955.

[2] These amounts represent the balances in the customer deposit accounts on Mar. 31, 1966.

### OPINION

Petitioners provided their customers with gas and related services for which petitioners billed on a monthly basis. During the years in issue, petitioners required new customers to deposit sums which were to be refunded upon either customer termination of service or petitioners' prior election. Typically, such amounts were credited against a customer's final bill, and any balance refunded. Petitioners treated the deposits as liabilities for all financial and accounting purposes.

In respondent's view, however, the amounts constitute advance payments includable in income either in the year of receipt or, if they are deemed payments for inventoriable goods within the meaning of section 1.451-5, Income Tax Regs., no

later than the second year following receipt. Conceding that the statute of limitations under section 6501(a)[6] otherwise bars taxation of amounts received before fiscal 1966, he notes that he first determined the deposits to be income in fiscal 1966. Hence, he maintains that he required a change in petitioners' method of accounting in fiscal 1966, and that customer deposits received in the barred years are, under section 481, includable in income in the later year.

Petitioners, on the other hand, characterize the amounts at issue as customer deposits. If the amounts are held income, they further argue that inclusion of the deposits in income does not constitute a method of accounting. Respondent may not, therefore, rely on section 481 to include in income amounts received in the barred years. We find for petitioners.

Advance payments to which a taxpayer-recipient has a present right, and over which he has unrestricted control, are income upon receipt, even though they are refundable under certain circumstances. *Hagen Advertising Displays, Inc. v. Commissioner*, 407 F.2d 1105, 1107 (6th Cir. 1969), affg. 47 T.C. 139 (1966) (payments for advertising signs); *Van Wagoner v. United States*, 368 F.2d 95, 97–98 (5th Cir. 1966) (5-percent commissions on "deposit premiums" received by insurance agency partnership); *BJR Corp. v. Commissioner*, 67 T.C. 111, 121–123 (1976) (advance rents for use of mobile homes). If, on the other hand, an amount is deposited with a taxpayer as a security payment which is to be returned, it is not income, although the taxpayer has temporary use of the money. *Mantell v. Commissioner*, 17 T.C. 1143, 1145, 1148 (1952) (security deposit for lessees' performance of numerous lease covenants). See *Warren Service Corp. v. Commissioner*, 110 F.2d 723, 724 (2d Cir. 1940), affg. on this ground 39 B.T.A. 856 (1939). In our view, the amounts at issue were received as security deposits subject to refund and do not, therefore, constitute income within the meaning of section 61. We have come to that view in the light of the totality of the facts and circumstances with respect to the deposited amounts.

Consistent with the rules of the FPSC authorizing utilities to require customer deposits "to guarantee payment of bills," the

---

[6]All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

receipts given customers for the deposits stated that the sums received by petitioners were "to be held as a deposit to secure payment of all bills for service rendered" to the customer. The receipts further stated that the amount of the deposit would be returned to the customer "after deducting any amounts owed to the company." Thus, petitioners, from the outset, acknowledged a liability to account for the deposited sums on the customer's payment for the services rendered.

The NARUC Uniform System of Accounts requires that deposits received by a gas company be recorded in an account designated as "Customer Deposits" and carried as a current liability account. Petitioners have always so treated the deposits for both tax reporting and financial reporting purposes. Customers were billed for services, and petitioners' income, for regulatory purposes, was computed without regard to the deposits. Indeed, deposits made by customers in the early 1960's with gas companies subsequently acquired by petitioners were handled in exactly the same manner. In other words, they were treated as liabilities of petitioners, even though the deposits had been made before the acquisition of the companies. The FPSC further required all gas companies subject to regulation to pay interest on the deposits, and City Gas paid interest in 1966, 1967, and 1968 by applying it to customers' bills.[7]

Upon the termination of service, the amounts owed to the company by a customer might include bills for gas service, turnon charges, turnoff charges, repairs to the customer's appliances, and any repairs necessary if the meter on the customer's premises had been damaged. If the deposit exceeded the customer's bill, a check was issued to the customer for all or part of the deposit. If the customer owed a balance in excess of a deposit, the bill was referred to the customer for payment. If a customer paid his final bill in full without regard to the deposit, the entire amount of the deposit was refunded. If a customer terminated service but intended to return to the area, he could pay all charges against his account and request petitioners to retain his deposit pending his return to the area. Under the law

---

[7]Although payment of interest on the amounts is a positive factor in the case of City Gas, we do not think that nonpayment of interest on the part of Dade Gas and Dri-Gas is, of itself, a dispositive factor requiring inclusion of deposits in the income of those petitioners. Cf. *United States v. Williams*, 395 F.2d 508, 511 (5th Cir. 1968).

in effect during the years in controversy, any amounts not refunded within 15 years of termination of service escheated to the State of Florida, and, as indicated in our findings, substantial amounts of deposits for inactive customer accounts were held by petitioners at the end of the period in issue.

Thus, although petitioners had temporary use of the customer deposits from the time of receipt, the deposited amounts were not advance payments for service but rather security to assure that the customer would pay all bills upon termination of the service. At all times, the deposits were treated as liabilities which petitioners owed to their customers subject to the deposit agreements. Those liabilities could be discharged only by applying the deposited amounts against unpaid bills for gas service and a variety of charges or by refunding them to the customers. Accordingly, we do not think any of the amounts at issue constituted income to petitioners when the deposits were received.[8]

To support his position, respondent cites cases holding that amounts received by a lessor are advance rentals, rather than security deposits, and are thus taxable in the year of receipt. *Gilken Corp. v. Commissioner*, 176 F.2d 141 (6th Cir. 1949), affg.

---

[8] By its terms, most of the evidence petitioners presented with respect to customer deposits was limited variously to the present time, the years in issue, or to fiscal 1966, 1967, and 1968. However, some of the amounts which respondent included in income for fiscal 1966 were received in earlier years.

Because the years in which the amounts were received are now barred, however, we do not sustain respondent's determination with respect to such amounts. Respondent argues that sec. 481 allows him to determine deficiencies with respect to these amounts only in the event that we hold that amounts received in fiscal 1966 are advance payments. We note, however, that sec. 481 does not apply if amounts received in fiscal 1966 and later years do not, as we hold, constitute income.

Sec. 481(a) provides:

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, * * *

Thus, if amounts are omitted from income in prior years solely by reason of the change in method of accounting, such amounts may be included in income for the year of the change pursuant to sec. 481 adjustments. Sec. 1.481–1(a)(1), (b), and (c)(1), Income Tax Regs. Because we uphold petitioner's tax treatment of customer deposits in fiscal 1966, there is no "change" in method of accounting in that year which would trigger application of sec. 481. *Angelus Funeral Home v. Commissioner*, 47 T.C. 391, 397 (1967), affd. on another issue 407 F.2d 210 (9th Cir. 1969), cert. denied 396 U.S. 824 (1969).

10 T.C. 445 (1948); *Astor Holding Co. v. Commissioner*, 135 F.2d 47 (5th Cir. 1943), affg. a Memorandum Opinion of this Court; *Commissioner v. Lyon*, 97 F.2d 70 (9th Cir. 1938), affg. a Memorandum Opinion of this Court; *J. & E. Enterprises, Inc. v. Commissioner*, T.C. Memo. 1967–191. In our view, the reasoning of these opinions weakens respondent's argument. The lessor-taxpayer in each of those cases had the right to apply the full amount of sums received during the year in issue to payment of a fixed rent for a later period during the term of the lease. Even if refundable under specified circumstances, the amounts were thus viewed by the courts as subject to the unrestricted control of the taxpayer and held includable in income upon receipt.[9]

In contrast, the full amount of a deposit received by one of petitioners was, unconditionally, subject to refund to the customer. If the refund was not effected, the amount would ultimately escheat to the State. Although the total deposit might be applied against amounts owed a petitioner upon customer termination of his account, or at petitioners' prior election, the right of petitioners to any part or all of the deposit was not fixed and could not be determined when the deposit was made. Indeed, unlike a tenant under a lease, a gas customer did not contract for services for any stated period or periods but could terminate service at any time. Petitioners became entitled to apply all or part of the deposited amounts only if a customer otherwise failed to pay all charges due at the termination of service.

According to respondent, the rental cases upon which he relies distinguish between sums which secure payment of rent for a future period and those which protect a property interest, including in income only the former type of sum. He, therefore, finds it necessary to determine whether the charges against which customer deposits may be applied are for gas or to secure a property interest. We do not agree.

The dichotomy which respondent observes is, we believe,

---

[9]Indeed, no circumstances required refund of the sum in *Astor Holding Co. v. Commissioner*, 135 F.2d 47, 48 (5th Cir. 1943), affg. a Memorandum Opinion of this Court. In *J. & E. Enterprises, Inc. v. Commissioner*, T.C. Memo. 1967–191, the Court's conclusion that the taxpayer had unrestricted control over the amounts at issue was buttressed by the fact that the circumstances requiring refund were under the sole control of the taxpayer. A comparable degree of control is suggested by the circumstance specified in *Commissioner v. Lyon*, 97 F.2d 70, 71 (9th Cir. 1938), affg. a Memorandum Opinion of this Court, "termination of this lease, otherwise than by the default of the lessee."

relevant in that it indicates whether the taxpayer had control over the amounts upon receipt. Sums which the parties agree to apply in full against a fixed future rental payment are, as the case law discussed above holds, subject to the lessor's control upon receipt. However, the lessor's right to amounts protecting a property interest depends upon the contingency of a future event causing damage to the property.

Superficially, petitioners' bills to customers resemble rent in that they are geared to a period of time. However, as noted above, customer bills provide for no fixed payment comparable to rent, but rather, fluctuate, covering different amounts of usage as well as additional items such as turnon charges, turnoff charges, and charges for repairs to customers' appliances and for damages to meters. Unlike a landlord receiving advance rentals under a long-term lease, petitioners have no present right to a fixed future payment.[10]

Respondent also cites Supreme Court holdings that prepaid annual membership dues and prepayments under contracts for dance lessons are includable when received by an accrual basis taxpayer. *Schlude v. Commissioner*, 372 U.S. 128 (1963); *American Automobile Association v. United States*, 367 U.S. 687 (1961); *Automobile Club v. Commissioner*, 353 U.S. 180 (1957). The issue in those cases was not, however, whether prepayments were income within the meaning of section 61, but rather, in what year they were includable under tax accounting principles. *Schlude v. Commissioner, supra* at 129; *American Automobile Association v. United States, supra* at 688; *Automobile Club v. Commissioner, supra* at 188–189. Moreover, the Court either found, or the taxpayer did not dispute, that the amounts were received with no obligation to refund. *Schlude v. Commissioner, supra* at 130, 135–136; *American Automobile Association v. United States, supra* at 690; *Automobile Club v. Commissioner, supra* at 189.

As respondent notes, the Supreme Court advanced another ground for its holdings in *Schlude* and *American Automobile Association*. In the Supreme Court's view, retroactive repeal of section 452, which permitted deferral of prepaid income, mani-

---

[10]We note that sec. 1.61–8(b), Income Tax Regs., specifically requires that a taxpayer-lessor, using any method of accounting, include advance rentals in income for the year of receipt. There is no comparable provision with respect to the deposits at issue here.

fested a congressional intent to affirm that such income was includable in the year of receipt. *Schlude v. Commissioner, supra* at 134–135; *American Automobile Association v. United States, supra* at 694–698. This argument, however, merely determines the year of inclusion for amounts which constitute income and is, therefore, inapposite to the case at hand.

Having based our conclusion on the foregoing ground, we do not discuss other arguments made by the parties.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*