CITY GAS COMPANY OF FLORIDA, et al., Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 80–5882.

United States Court of Appeals, Eleventh Circuit.

Oct. 21, 1982.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Ann Belanger Durney, Karl P. Fryzel, Daniel F. Ross, Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellant.

Miller & Chevalier, David W. Richmond, Charles J. Monahan, Frederick Brook Voght, Washington, D. C., for petitioners-appellees.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The Commissioner of Internal Revenue brings this appeal from adverse judgments entered by the Tax Court of the United States. The sole issue on appeal is whether certain deposits paid by customers upon the opening of new accounts are includable in appellees' gross income. The Tax Court held that these deposits were not income. *City Gas Co. of Florida v. Commissioner,* 74 T.C. 386 (1980). After reviewing the applicable case law, however, we conclude that deposits of this nature are income if the primary purpose of the deposit is to act as a prepayment of income items. Because the Tax Court applied a different legal standard, the judgments below must be reversed and the case remanded for further proceedings.

## I. FACTS

At issue in this case is the federal income tax treatment of certain customer deposits received by appellees City Gas Company of Florida ("City Gas"), Dri-Gas Corporation ("Dri-Gas"), and Dade Gas Company ("Dade Gas"). City Gas is a public utility engaged in the business of selling natural gas to both private and commercial customers. City Gas is a Florida corporation and is under the regulatory jurisdiction of the Florida Public Service Commission ("FPSC"). Dri-Gas and Dade Gas are wholly owned subsidiaries of City Gas. They are unregulated utility companies that sell liquid propane gas to residential and commercial customers. Each of these companies follow the accrual method of accounting for federal income tax purposes.

In the normal course of business, all three companies required new customers to deposit a sum of money in order to open an account. The companies required new residential customers to make a $15 deposit during fiscal years 1966, 1967, and 1968. Commercial customers were required to deposit the equivalent of twice their expected monthly bill. When a customer paid the deposit, he was given a receipt which read as follows:

To be held as a deposit to secure payment of all bills for service rendered above customer. Upon discontinuance of service, or at the election of the company prior thereto, the amount of this deposit will be returned to the depositor after deducting any amounts owed to the company.

The companies had the benefit of the use of those funds while holding them and mingled those funds with general corporate funds.

With respect to its accounts for natural gas service, City Gas was required to comply with the requirements of the FPSC. The FPSC promulgated the following rules relating to customer deposits:

Rule 310–7.54 Customer Deposits

(1) Each utility may require from any customer or prospective customer a cash deposit intended to guarantee payment of bills, such deposit not to exceed ten dollars ($10.00) or an amount necessary to cover charges for service for two billing periods, whichever is greater.

(2) A non-transferable certificate of deposit shall be issued to the customer and means provided so that the customer may claim deposit if certificate is lost.

(3) Each utility having on hand deposits from customers shall keep records to show: (a) the name of each customer making such deposit; (b) the premises occupied by the customer when the deposit was made; (c) the amount and date of making such deposit; and (d) a record of each transaction concerning such deposit.

(4) the utility may provide for the return of the deposit after a reasonable period.

(5) Upon termination of service the deposit may be credited against the final account and the balance, if any, shall be returned to the customer.

The FPSC also required City Gas to pay interest on customer deposits at a rate of 4% or higher in March, 1966, July, 1967, and July, 1968, at which time the interest was credited against the customer's bill. Dri-Gas and Dade Gas were not subject to the jurisdiction of the FPSC and therefore paid no interest on deposits, and City Gas paid no interest on deposits on propane accounts that were not under the FPSC's jurisdiction.

Upon the termination of service, which the customer was entitled to effect at any time, the companies billed the customer for the balance of the gas used by the customer, any outstanding service charge, including turn-on and turn-off charges and repairs to the customer's appliances and pipes, any taxes due, and charges for any damage to meters.

The deposit was generally applied to this final bill. If any amount due remained, the customer was billed for this amount. If a credit resulted, the companies would refund this amount to the customer. Where customers paid their final bill in full without regard to their deposit, they were entitled to a full refund of the deposit. Deposits that went unclaimed escheated to the State of Florida after a period of time.[1]

Between 1962 and 1968, the FPSC required utilities under its jurisdiction to follow the National Association of Regulatory Utility Commissioners ("NARUC") Uniform System of Accounts for financial accounting purposes. The NARUC System treated customer deposits as current liabilities. During this period, appellees likewise treated the deposits as current liabilities rather than income for federal income tax purposes.

The Commissioner filed notices of deficiency with respect to each company on September 14, 1973. The deficiencies related to tax returns filed for appellees' fiscal years ending in 1963 through 1968. The Commissioner took the position that the deposits constituted advance payments for gas, and as such were includable in income.[2]

Appellees petitioned the Tax Court of the United States for a redetermination of the deficiencies noted above, arguing that the customer deposits were nontaxable security deposits. After holding an evidentiary hearing, the Tax Court concluded that these deposits did not constitute income. The Commissioner appeals.

## II. ADVANCE PAYMENT OR SECURITY DEPOSIT—THE PRIMARY PURPOSE TEST

This case requires us to examine the taxability of customer payments to utility companies that are labeled "deposits." More specifically, we must determine whether these amounts are includable in gross income under § 61 of the Internal Revenue Code of 1954 and the applicable case law.[3]

It is well settled that where a taxpayer receives an advance payment for goods or services or other income items over which the taxpayer has a present right and complete and unrestricted control, the advance payment constitutes income. *Van Wagoner v. United States,* 368 F.2d 95, 98 (5th Cir. 1966); *Hirsch Improvement Co. v. Commissioner,* 143 F.2d 912, 915 (2d Cir. 1944), *cert. denied,* 323 U.S. 750, 65 S.Ct. 84, 89 L.Ed.

---

1. The escheat period, originally 15 years, was shortened to 7 years effective October 1, 1977. *See* Fla.Stat.Ann. § 717.05 (West Supp.1982).

2. The Commissioner also took the position below that such advance payments would be includable in appellees' income in the year of receipt or in the second year following receipt under § 1.451–5 of the Treasury Regulations on income tax, 26 C.F.R. § 1.451–5 (1981). Because the Tax Court concluded that these deposits were not income, it did not address this issue. On remand, if the Tax Court concludes that these deposits are income pursuant to the test set forth *infra,* it will need to address this issue. Accordingly, we express no opinion on it.

3. Unless otherwise noted, statutory citations are to the Internal Revenue Code of 1954 as in force during the tax periods relevant here.

601 (1945); *Astor Holding Co. v. Commissioner*, 135 F.2d 47, 48 (5th Cir. 1943); *Clinton Hotel Realty Corp. v. Commissioner*, 128 F.2d 968, 969 (5th Cir. 1942). Such payments are taxable even though a refund may be required under certain circumstances. *J. and E. Enterprises, Inc. v. Commissioner*, T.C.M. (P–H) ¶ 67–191 (1967). *Mantell v. Commissioner*, 17 T.C. 1143, 1148 (1952); *Hirsch Improvement Co. v. Commissioner*, 143 F.2d at 915. An example of such an advance payment would be a sum paid to a lessor at the beginning of a lease which is to be applied to the rent for a subsequent period, such as the final month or year of the leasehold. *See J. and E. Enterprises, Inc. v. Commissioner, supra.*

■ On the other hand, where the amount paid is intended to secure property of the taxpayer against damages or loss, or to secure the performance of conditions or other nonincome-producing covenants of a contract, and the sum is to be returned to the payor, the payment is a nontaxable security deposit, notwithstanding the fact that the taxpayer had temporary use of the money. *Mantell v. Commissioner*, 17 T.C. at 1148; *Clinton Hotel Realty Corp. v. Commissioner*, 128 F.2d at 969; *Growers Credit Corp. v. Commissioner*, 33 T.C. 981, 996–97 (1960). An example of such a case would be where a lessor requires a lessee to deposit a sum to secure against damage to the rented premises and agrees to refund the deposit in full if no such damage occurs.

In the instant case, there is little doubt but that taxpayers here have a present right to income,[4] and it is undisputed that taxpayers have unrestricted control over the sums deposited. The issue is whether the sums were intended to be applied to discharge payment for income items (*e.g.*, the final month's bill for gas, or for turn-on

and turn-off charges or other charges for services), or on the other hand were intended to secure performance of nonincome-producing covenants (*e.g.*, damage to meters).

■ Of course, it is unrealistic to expect that all cases will fit neatly into one of two categories mentioned above. Often the purpose of an advance payment or deposit is mixed; it may serve both as security for property or performance of nonincome-producing covenants and also as a prepayment of bills, rent, or other charges for goods or services. As we understand it, the taxpayers here do not, nor could they, argue that the payments at issue were intended solely as collateral to secure performance of nonincome covenants; taxpayers argue only that the purpose was mixed. In such cases, the taxation of such payments must turn on the circumstances of the transaction and the intent of the parties: if the *primary* purpose of the payment is to act as a prepayment for goods and services, then the amount constitutes taxable income; but if the *primary* purpose is to secure performance of nonincome-producing covenants or to secure against damage to property, then the payment is not taxable. Several cases have expressly adopted a primary purpose test. *Mantell v. Commissioner*, 17 T.C. at 1148; *Hirsch Improvement Co. v. Commissioner*, 143 F.2d at 915; *Gilken Corp. v. Commissioner*, 10 T.C. 445, 454 (1948), *aff'd*, 176 F.2d 141 (6th Cir. 1949). *See* Rev.Rul. 72–519, 1972–2 Cum.Bul. 32.[5]

Although the former Fifth Circuit cases[6] in this area have not expressly announced a primary purpose test when reviewing the taxable status of advance payments and deposits, that test emerges from a careful reading of those cases. In *Clinton Hotel Realty Corp. v. Commissioner, supra,* the taxpayer leased its hotel for a term of ten

---

4. *See* footnote 10, *infra.*

5. Although a Revenue Ruling does not have the force and effect of a Treasury Department Regulation, 26 C.F.R. § 601.601(d)(2)(v)(*d*) (1981), it is "not without weight and is entitled to respectful consideration." *Groves v. United States*, 533 F.2d 1376, 1380 (5th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d

611 (1976). *Accord, Macey's Jewelry Corp. v. United States*, 387 F.2d 70, 73 (5th Cir. 1967).

6. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

years, and received from the lessee in advance a sum equal to the last year's rent. This amount served, in part, as security for payment of rent under the lease, and was to be applied to the last year's rent if all terms and conditions under the lease were met. The sum also acted as security for a variety of items other than the payment of rent, mainly performance of certain conditions and other covenants in the lease. Among these were that the lessee must certify the inventory of and preserve all items of personal property delivered to him, replace any items damaged or lost, maintain in good condition the interior and fixtures of the hotel, insure that no liens for repairs were placed on the property, and replace all linens used more than one year. The lease allowed the taxpayer to retain as liquidated damages the amount of the deposit, and the taxpayer paid slightly less than 5 percent interest on the money, which could be credited against rent. In event of destruction of the property, the deposit would be refunded. The court concluded that, on these facts, the intended status of the deposit was to secure performance of the other covenants, rather than a prepayment of rent. Therefore, the court held that the amount was not taxable.

The *Clinton* case reflects an instance where the sum paid at the beginning of the business relationship contained elements of both prepayment for goods and services and security for performance of other nonincome-producing covenants of the contract. In its analysis, the court does not suggest that the mere existence of a purpose other than prepayment of rent was dispositive; the court concluded that the deposit was not taxable only after examining the numerous other purposes of the payment to discern the intent of the parties. Although the court did not explicitly rely on a primary purpose test, such a test is consistent both with its approach and with the result of the case.

In *Astor Holding Co. v. Commissioner,* 135 F.2d 47 (5th Cir. 1943), the court interpreted the *Clinton* test. In *Astor,* the taxpayer contended that an advance payment that was described as a "part payment of the tenth year's rent" and on which no interest was paid was nonetheless nontaxable under *Clinton.* The court, after noting the distinction between prepayments and security deposits, held that "whether a payment falls into one category or the other depends on all the facts and circumstances." *Id.* at 48. Distinguishing *Clinton,* the court concluded that the payments in *Astor* were taxable prepayments of rent.

More recently, the court in *Van Wagoner v. United States,* 368 F.2d 95 (5th Cir. 1966), concluded that advance payments made to insurance agents as "deposit premiums" fell on the taxable side of the prepayment/security deposit dichotomy. There, the "deposit premiums" secured the performance of policy obligations of the insured, including submission of required reports and payment of the policy premium. At the end of the policy period, the deposit would be applied to the insured's account, and any excess would be refunded. No interest was paid on this amount. The court rejected argument that this case more closely resembled *Clinton* than *Astor,* despite the dual purpose of the deposit. The court held that "under the circumstances" this payment was an advance premium payment, noting that the taxpayers had complete and unrestricted control over the amount and paid no interest on it.

Both the *Astor* and *Van Wagoner* courts applied an "all the circumstances" approach. Together, they stand for the proposition that if, under the circumstances of the individual case, the deposit more closely resembles a prepayment for goods and services rather than security for property or performance of nonincome-producing covenants, then the payment will be taxable. This test is essentially a restatement of the primary purpose test, outlined above. If the parties structure the transaction in such a way so as to make the primary purpose of the payment to be a prepayment of goods and services, then under "all the circumstances" the payment is taxable.

 In sum, we conclude that, consistent with the above former Fifth Circuit

precedent, the test to be applied in this case is whether, under all the circumstances, the primary purpose of the payments at issue was a prepayment of income items, or whether the primary purpose was to secure the performance of nonincome-producing covenants.[7]

The taxpayers cite the decision of the First Circuit in *Boston Consolidated Gas Co. v. Commissioner,* 128 F.2d 473 (1st Cir. 1942), for the proposition that the appropriate test for determining whether a customer deposit is income to a utility company turns on when the utility transfers the deposits to a profit and loss account on its ledger. In *Boston Consolidated Gas,* the utility company had originally carried customer deposits on its books as liabilities. When balancing its books, the utility company transferred some unclaimed deposits to a profit account.[8] The utility company there contended that the unclaimed deposits were not taxable because they were still debts owed by the company. The Commissioner argued that this transfer made the deposits available for the general use of the utility company for the first time and therefore were taxable upon transfer to the profit and loss account. The First Circuit held for the Commissioner, stating that although the deposits were originally liabilities, "as a practical matter, they became income by the passage of time." 128 F.2d at 473.

We do not believe that *Boston Consolidated Gas* offers strong support for rejection of the primary purpose test in the context of utility customer deposits. The court in *Boston Consolidated Gas* made no analysis of the purpose of the deposit, but assumed that it was to secure payment of an income item. The court concluded that the deposits were taxable when they became available for the use of the utility. The *Boston Consolidated Gas* court was not presented with the argument that customer deposits could be taxable income during the time that the deposits were treated as liabilities for accounting purposes; the Commissioner's argument there assumed that the deposits were not available for the general use of the utility until the utility altered the bookkeeping treatment of these funds from liability to profit.[9] The *Boston Consolidated Gas* court, therefore, did not consider the argument advanced by the Commissioner here, namely whether deposits that are pri-

---

**7.** If on remand the Tax Court concludes that the primary intent was that the sums at issue be applied to discharge income items on the final bill (*e.g.,* charges for gas, turn-on and turn-off and other service charges), the fact that the sums were labeled as "deposits to secure payment" cannot by itself preclude a finding that the sums were intended as prepayments. Although several courts have mentioned the "security" label as one factor, *Clinton Hotel Realty Corp. v. Commissioner, supra, Astor Holding Co. v. Commissioner, supra, Mantell v. Commissioner, supra,* we have found no case which would support a finding for the taxpayer where sums labeled as a "deposit" or "security" were subject to the unrestricted control of a taxpayer with a present right thereto and were intended to be applied against income items. The case law requiring a finding for the Commissioner under such circumstances, *Van Wagoner v. United States, supra, J. and E. Enterprises, Inc. v. Commissioner, Gilken Corp. v. Commissioner,* is based, we think, upon the unarticulated rationale that under such circumstances the sums are in substance prepayments. *See Mantell v. Commissioner,* 17 T.C. at 1148. We express no opinion with respect to the substance of payments under other circumstances, *e.g.,* where sums intended to se-

cure payment of future income items are deposited in escrow and taxpayer must foreclose to assert its security interest.

Likewise, while the payment of interest might have significance under some circumstances, we doubt the importance of interest payments in this case. Although some courts have said that payment of interest is a factor suggestive of a nontaxable deposit, *Van Wagoner v. United States,* 368 F.2d at 98; *Clinton Hotel Realty Corp. v. Commissioner,* 128 F.2d at 970, other courts have recognized that interest may reflect compensation for the advance payment of income items as well. *United States v. Williams,* 395 F.2d 508, 511 (5th Cir. 1968); *Commissioner v. Lyon,* 97 F.2d 70, 74 (9th Cir. 1938). Therefore, the Tax Court properly placed little emphasis on whether or not interest was paid in this case.

**8.** In Massachusetts, at the time, such unrefunded payments did not escheat to the State.

**9.** To the extent that the *Boston Consolidated Gas* holding reflected the position of the Commissioner on taxation of utility customer deposits at that time, Rev.Rul. 72–519 indicates that the Commissioner has abandoned that position.

marily related to payment of income items and that are mingled with general corporate assets are taxable income, notwithstanding the accounting treatment of these deposits as liabilities. *Id.* at 475. Moreover, even if the *Boston Consolidated Gas* case could be construed as rejecting the argument advanced by the Commissioner here, it would stand in conflict with the principles enunciated in decisions of the former Fifth Circuit and other courts, noted above, that require taxation of deposits when the primary purpose is an advance payment for gas. We see no reason to create an exception to this rule solely for the gas industry.

In its opinion in the instant case, the Tax Court specifically rejected the argument that it must determine whether the purpose of the deposit was to act as a payment for gas and services or to secure a property interest. 74 T.C. at 394. Instead, the court concluded that the deposits were not taxable, basing its holding essentially on two factors. First, the court noted that the amounts were treated as liabilities on the taxpayers' books as required by the NARUC Uniform System of Accounts. However, treatment of an item under financial accounting methods is not dispositive for federal income tax purposes. *Commissioner v. Idaho Power Co.,* 418 U.S. 1, 15, 94 S.Ct. 2757, 2765, 41 L.Ed.2d 535 (1974); *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979). Although a method of financial accounting imposed by a regulatory agency may be of some significance in determining the tax consequences of a transaction, it is not controlling if that method does not clearly reflect income. *Commissioner v. Idaho Power Co.,* 418 U.S. at 15, 94 S.Ct. at 2765. Because of the differing purposes and goals of financial and tax accounting, it is not surprising that under certain circumstances financial accounting methods will not clearly reflect income as defined by the tax law. *See Thor Power Tool Co. v. Commissioner,* 439 U.S. at 542–44, 99 S.Ct. at 786–787. Moreover, the NARUC financial accounting treatment of deposits in the utility industry makes no distinction between deposits intended as prepayments for goods and serv-ices (*i.e.,* income items) and those intended to secure property interests. On the contrary, it adopts a blanket rule that all such deposits are current liabilities. Of course, prepayments of income are always, in a sense, liabilities; but this fact clearly is not dispositive of whether such amounts are taxable income. Principles of income taxation require that advance payments be taxed if the primary purpose of such payments is to act as a prepayment for goods and services. Because the NARUC system does not apply this principle, it cannot be said to clearly reflect income for income tax purposes.

Secondly, the Tax Court distinguished the rent cases cited above as being cases where the amount deposited could be applied to a *fixed* payment of rent. In this case, the Tax Court noted, there is no comparable fixed charge that serves as the last month's bill; the final charge varies depending upon the services used by the customer. Hence, some refund might be due to the customer. The Tax Court concluded that because there is no present right to a fixed future payment, the deposits cannot be taxable prepayments. The distinction drawn by the Tax Court cannot withstand close scrutiny. The rationale of the rent cases does not turn on there being a fixed charge to which the deposit would be applied; rather those cases suggest that the deposit itself would be taxable if its purpose was prepayment of charges for rent. Any question in this regard is answered by the former Fifth Circuit's opinion in *Van Wagoner v. United States,* 368 F.2d 95 (5th Cir. 1966). There, the "deposit premium" was intended to secure payment of insurance policy premiums. The amount of those premiums varied depending on the actual usage of the insured oil drilling rigs. *Id.* at 96. The court, applying the *Clinton* and *Astor* rent cases, held that the deposit premiums were subject to the free and unrestricted control of the taxpayers and were taxable. Therefore, despite the fact that the "deposit premiums" were intended to secure payment of premiums that were not fixed, the court held that the deposit premiums were taxable under the rationale of the rent cases, thus effectively rejecting the distinction

made by the Tax Court here. Nor did the *Van Wagoner* court view the contingency that the deposit premium would exceed the balance due on a customer's account, requiring a refund, to be of critical importance; recognizing this fact, the court nonetheless concluded that the deposit premiums were taxable. Likewise, in the cases at bar, the contingency that the amount of the deposit might exceed the final bill, or that the customer might pay the final bill without regard to the deposit, thus requiring a refund, does not indicate that these deposits are not taxable income.[10]

Because the Tax Court did not apply the primary purpose test to the cases at bar, we must reverse the judgments below and remand for further proceedings. It is appropriate that the test herein enunciated be applied to the instant facts in the first instance by the distinguished judge of the Tax Court on remand.

REVERSED AND REMANDED.

---

10. The Tax Court may have thought that the taxpayers here had no "present right" to any income because there may have been no services or gas delivered to a particular customer as of the moment of that customer's deposit, and consequently no obligation to pay on the part of that customer as of that moment, and therefore no right to income. However, as soon as gas is turned on, the consumer has an obligation to pay for the service of turning the gas on and for the continuing volume of gas supplied to the customer. The taxpayers would have a continuing "present right" to income resulting from these revolving obligations. Thus, we doubt that the taxpayer can demonstrate the lack of a "present right" to income. *Van Wagoner v. United States,* 368 F.2d at 96. The issue is whether these deposits are primarily related to these income items or, on the other hand, to other nonincome items.