**D. M. HAGGARD and Nila Haggard, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15040.

United States Court of Appeals Ninth Circuit.

Dec. 6, 1956.

W. Lee McLane, Jr., Nola McLane, McLane & McLane, of counsel, Phoenix, Ariz., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Hilbert P. Zarky, Sheldon I. Fink and Helen A. Buckley, Attorneys, Dept. of Justice, Washington, D. C., for respondent.

Before STEPHENS, POPE and FEE, Circuit Judges.

PER CURIAM.

This was a proceeding in the Tax Court, wherein a decision sustaining a deficiency against the Haggards, as taxpayers, was entered. Review of the decision by this Court is asked.

The Haggards are operators of a ranch in Arizona. On February 9, 1948, two documents were entered into simultaneously between one Butler and the Haggards. The effect of these instruments

was to lease 160 acres of land to the Haggards for the rest of 1948 for $10,000.00, for 1949 for $12,000.00, to grant an option for $2,000.00 cash to purchase the tract after January 1, 1950, and before January 10, 1950, for $24,000.00. The option was of course, exercised and the Haggards became the purchasers.

Haggards, as taxpayers, treated the $12,000.00 above mentioned as rental, but the Commissioner determined this sum as an installment on the purchase price of the property. The Tax Court held under § 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A), that taxpayers, by means of these payments, were either taking title to or acquiring equity in the property involved and therefore were not entitled to deduct these payments as rent, regardless of what the parties nominally may have called the installments.

We are of opinion that the net effect of these two documents, entered simultaneously, was to confer an equity in the property to the Haggards, and the Tax Court was correct in so holding. The intent of the parties was perfectly plain. The bare fact that one of the joined documents was drawn in lease form and terminology by the parties is of no consequence. The purpose of the contracts was clear, and therefore, the tax consequences are well settled. There was besides a great deal of evidence that the parties in fact intended this result and knew the consequences. Butler bought the farm for $40-000.00 in 1945, made a loss in 1946 by farming the land and another loss in 1946 by leasing it to another. He negotiated for sale at $48,000.00 early in 1948 and placed it in the hands of a real estate agent for that figure. He had an offer for purchase at $48,000.00, which he would have accepted if the installment payments had been sufficient to cover his own recurring obligations on the purchase price. The attorneys who drew the documents told Butler to report the transaction as a sale on his tax return, and he did so.

If a straight economic test were applied, still the determination was correct.

The Tax Court found the fair rental value of the property in 1948 was $3,-000.00 to $4,000.00 and in 1949 was $5,-000.00. The earnings of Butler from operation of the property in 1946 were much lower. In 1947, he rented the place to an experienced farmer for $4,-000.00. There is no doubt the Haggards could not have economically sustained the loss of $24,000.00 by refusing to pay the other half of the purchase price between January 1 and January 10, 1950. There would be no justification for applying part of this sum of $48,000.00 as rental and part as purchase price. Every circumstance points to a sale on February 9, 1948.

Judgment affirmed.