Estate of Adam Holzwarth, Deceased, Mary Holzwarth, Administratrix, and Mary Holzwarth, Surviving Spouse v. Commissioner. Estate of Adam Holzwarth, Deceased, Mary Holzwarth, Administratrix v. Commissioner.
Estate of Holzwarth v. Commissioner
Docket Nos. 2601-64, 4089-64.
United States Tax Court
T.C. Memo 1965-304; 1965 Tax Ct. Memo LEXIS 26; 24 T.C.M. (CCH) 1676; T.C.M. (RIA) 65304; November 22, 1965
H. R. Whiting, for the petitioners. Eugene H. Ciranni and Martin H. Schainbaum, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in income tax of the petitioner at Docket No. 2601-64 for the year 1960 in the amount of $4,736.19 and of the petitioner at Docket No. 4089-64 for the fiscal year ended February 28, 1963, in the amount of $335.40. Petitioners have not raised issues with respect to certain minor adjustments in the statutory notice issues in Docket No. 4089-64. The sole question presented for decision is whether an agreement entered into by Adam Holzwarth and Mary Holzwarth in 1960 whereby property is transferred by a document which purports to be a lease was, for tax purposes, "a sale in effect" or a bona fide lease. Findings of Fact
*27 Some of the facts have been stipulated, and as stipulated are found accordingly. Adam Holzwarth and Mary Holzwarth filed a Federal joint income tax return with the district director of internal revenue, San Francisco, California, on June 14, 1961. Adam Holzwarth died on March 6, 1962. Mary Holzwarth, as administratrix of the estate of Adam Holzwarth, filed a U.S. fiduciary income tax return (Form 1041) for the estate of Adam Holzwarth for the fiscal year ended March 6, 1963. Adam and Mary Holzwarth purchased certain property (hereinafter sometimes referred to as the Holzwarth property) in the city of Menlo Park, California, in 1924, and resided in a dwelling house thereon from 1924 until 1960. In August 1957, Adam and Mary Holzwarth rejected an offer to purchase said property for $65,000; and, in January 1960 they rejected an offer to purchase the same for $90,000. Early in 1960, the Holzwarths tentatively agreed to rent a portion [1] of the Holzwarth property on a month-to-month basis to Charles W. Angelo for a stipulated rental of $100 per month. Earlier, they had received offers to rent said property for $150 per month, and for $100 per month. *28 In 1960, the Holzwarths' use of the property for residential purposes constituted a nonconforming use under the Comprehensive Zoning Ordinance (Ordinance No. 228), which had been adopted by the city of Menlo Park in 1953. [2]
Adam Holzwarth was reluctant to part with the property in issue. However, the Holzwarths had to utilize their capital investment in the property so as to generate income on which to live. On May 11, 1960, Adam Holzwarth and Mary Holzwarth entered into an option-to-lease agreement with Ray T. Lindsay (hereinafter referred to as Lindsay or "lessee") relating to the Holzwarth property. This agreement included an attachment which contained the terms and conditions of the lease which the parties agreed would be executed in the event Lindsay exercised his option. Lindsay exercised his option-to-lease the Holzwarth property by letter dated August 10, 1960. On September 9, 1960, Adam and Mary Holzwarth, as lessors, and Lindsay, as lessee, executed a document entitled "LEASE" relating to the Holzwarth property. This contract provided, in part, as follows: 2. Terms The term *29 of said lease shall be fifty (50) years, commencing on the 12th day of September, 1960. 3. Consideration for entering lease Consideration from Lessee to Lessors for entering the lease payable upon execution thereof is the sum of $25,000.00; said sum is not a deposit for rent. 4. Rent As rent, Lessee will pay to Lessors upon the 1st day of the month following the removal of lessors residence from said property, $400.00 and will continue to pay $400.00 rent in monthly installments on the 1st day of each and every month thereafter until the total of rent and consideration for entering the lease in the amount of $240,000.00 has been fully paid; $600.00 heretofore paid to lessors under the option agreement shall be applied on account of the first and second months' rent; if Lessee has kept and performed all of the terms, covenants and conditions of this lease as of June 27, 2005, the $25,000.00 paid as consideration for entering this lease shall be applied for the balance of said term and Lessee shall have no further obligation to pay rent for the balance of the term of this lease. 5. Payment of Taxes As additional condition hereunder, Lessee agrees to and shall pay and discharge, *30 prior to delinquency, all taxes and assessments which may be levied against said premises; or any portion thereof which by any public authority may be permitted to go to bond and may be paid in installments, as permitted by the public authority levying said assessments, and Lessee will pay, before delinquency, all installments of said assessments becoming due during the term of this lease. * * *
22. Condemnation In the event that any of said property, including that along the rear of the leased property, is condemned by any public authority for use as an alley, parking or other purpose, such fact shall not releive Lessee from or cause a reduction in rent hereunder; any proceeds from such condemnation shall be allocated between the Lessors and Lessee according to the diminution in market value, resulting from the condemnation, of each of their respective interests in the property and improvements constructed thereon. Lessee further agrees to pay for and hold Lessor harmless from any assessments for any costs of improvements, including street work or paving; in the event, however, that sufficient property is condemned by any public authority so as to make it unprofitable for *31 Lessee to continue with the lease, that at lessee's option the lease may be terminated upon written notice given to Lessors. * * *
26. Option to Purchase Lessor hereby grants to Lessee an option to purchase said property at any time on or after the first day of June, 1984 but not later than June 1, 1985 at the price of $110,000.00 on account of which the total amount of consideration for entering this lease ($25,000) plus interest thereon at the rate of 5% per annum from June 1, 1960 to June 1, 1984 shall be credited and applied as follows: $25,000
consideration for entering lease
30,000
interest
$55,000
total credit The lease also contained, among others, the following clauses: (1) subordination of the lessors' interest in the Holzwarth property so that construction loans, secured by the Holzwarth property, could be obtained by the lessee; (2) a requirement that the lessee furnish a bond to the lessors conditioned upon completion of improvements free from all liens; (3) prohibition against the lessee's maintaining a nuisance, or committing waste with respect to that property; (4) a requirement that the lessee maintain the property in good repair; (5) *32 a requirement that the lessee keep the Holzwarth property free from all mechanics' or other liens; (6) reservation of the right of reentry to the lessors; (7) absolution of the lessors from liability for damages to persons or property occurring on the Holzwarth property; (8) a provision for termination of the lease in the event of bankruptcy of the lessee; (9) a requirement that the lessee insure the improvements placed on the Holzwarth property; and (10) a provision for termination of the lease in the event that the lessee should default with respect to any of the terms and conditions of the lease. Real estate taxes on the Holzwarth property amounted to approximately $1,100 per year in 1960. In connection with the lease negotiation, the Holzwarths' attorney wrote a letter dated September 15, 1960, to the San Mateo Title Company wherein he made several references to the transaction in issue which he described as a lease transaction. Also, in connection with said negotiation, the attorney wrote a letter to Lindsay wherein he referred to the transaction in issue as a lease transaction. Lindsay intended the transaction to be a lease; although, at the time the lease was executed, *33 he expected to exercise the "option to purchase." Adam and Mary Holzwarth removed their house from the Holzwarth property after the lease was executed and placed it on another lot in East Palo Alto, California. The lessee built a motel upon the Holzwarth property. In 1949, the city of Menlo Park had adopted a streets and highways master plan which provided that an alley eventually would be built through the rear portion of the Holzwarth property, including that portion on which the Holzwarths' residence was situated. However, said alley was never built by the city of Menlo Park until after the lease in issue was executed and the motel built. The lessee left vacant the area designated for construction of the alley. On November 13, 1962, the Holzwarths' attorney filed in the Superior Court of the State of California for the County of San Mateo an Inventory and Appraisement in the matter of the estate of Adam Holzwarth, one of the petitioners herein. The Holzwarth property was included among the assets of Adam Holzwarth in that Inventory and Appraisement at an appraised value of $110,000. On January 22, 1965, Lindsay requested that an additional deed of trust relating to the *34 Holzwarth property be executed by Mary Holzwarth so that he could obtain additional loans from the Bank of America to finance his operation of the above-mentioned motel. Also, on January 22, 1965, Lindsay refused to purchase the Holzwarth property. The records of the San Mateo County's tax collector reflect Adam and Mary Holzwarth as being the owners of the Holzwarth property. Adam and Mary Holzwarth reported on their Federal income tax return for the year 1960 the amount of $25,600 received pursuant to the "lease" agreement as capital gain. On Adam and Mary Holzwarth's estate tax return, the sum of $2,400 received as rent pursuant to the lease agreement was reported as capital gain. Respondent determined that the $25,600 payment reported in 1960 on the Holzwarths' joint return and the $2,400 payment reported in 1963 on Adam Holzwarth's estate tax return are taxable as ordinary income. Ultimate Finding of Fact The agreement negotiated by Adam and Mary Holzwarth and Lindsay constitutes a bona fide lease. Opinion The sole issue for decision is whether a transaction whereby real property is transferred pursuant to a document which purports to be a 50-year lease constitutes, *35 for tax purposes, a sale or a lease. Petitioners contend that the transaction in issue was in effect a type of conditional sale. It is respondent's position that no sale has occurred herein within the purview of section 1222, Internal Revenue Code of 1954, and that the agreement in issue is a lease as it is denominated. Theoretically, the distinction between an ordinary lease and a conditional sale is well settled: a lease contemplates only the use of property for a limited time and its return to the lessor at the extinction of that time; whereas a conditional sale contemplates the ultimate ownership of property by the buyer, together with the use of it in the meantime. In reality, however, certain transfers of property may, chameleon-like, exhibit characteristics of both sale and lease. In determining whether a transaction is to be considered a sale or lease, courts look to the substance of the transaction. We begin our analysis with the premise that the parties are free, as far as the law is concerned, either to sell or to lease. However, they must accept the consequences properly attributable to the transaction which in fact transpired. To ascertain *36 the true character of the transaction, it is necessary to analyze the intention of the parties as evidenced by the written agreement, read in the light of the attending facts and circumstances existing at the time said agreement was executed. The precise question posed herein has been before this Court on numerous occasions. The principle extending throughout the cases heretofore decided by us on like issues is that where the "lessee" as a result of the "rental" payments acquires something of value in relation to the over-all transaction, other than the mere use of the property, he is building an "equity" in the property. Under such circumstances, the payment does not come within the definition of rent. Haggard v. Commissioner, 241 F. 2d 288 (C.A. 9, 1956), affirming per curiam 24 T.C. 1124 (1955). In the instant case, we are not convinced that, by the payment of rent, lessee was acquiring anything other than merely the use of the property. Petitioners have wholly failed to convince us that the rental payments [3] made under the lease were excessive in terms of the Holzwarth property's fair rental value. Although there is evidence that previous offers to *37 lease the Holzwarth property entailed substantially lower rental payments, such offers were unsolicited by the Holzwarths. At no time did they actively seek to lease their property. Moreover, there was no satisfactory evidence introduced as to the rental paid for similar properties in the area [4] nor did petitioners offer any expert testimony regarding the fair rental value of the Holzwarth property. Since the rental payments have not been shown to be in excess of the property's fair rental value, we cannot say that by the mere payment of rent, lessee was acquiring anything other than the mere use of the Holzwarth property. Another factor which leads us to conclude that Lindsay was merely paying for the use of the Holzwarth property is the size of the option price. After 25 years of *38 making rental payments (amounting to $120,000), Lindsay would still have to pay the very substantial sum of $55,000 to become owner of said property - an amount roughly equivalent to 60 to 70 percent of the property's value at the time of the agreement. [5]
The size of Lindsay's investment in the motel building ($350,000) does not support petitioners' contention that the transaction was a sale due to (1) the length of the full lease term (50 years) and (2) the availability to Lindsay of depreciation deductions as a means of recovering his investment. In a narrative statement, *39 Lindsay himself averred that he intended the agreement executed with the Holzwarths to be a lease and understood it as such. We find the facts in Estate of Mary G. Gordon, 17 T.C. 427 (1951), affd. per curiam 201 F. 2d 171 (C.A. 6, 1952), strikingly similar to those presented herein. This Court there held that the instrument in issue was a lease as it purported to be. We believe that the facts in the case at bar even more strongly indicate a bona fide lease. Petitioners have brought to our attention several cases which are not decisive here. In Oesterreich v. Commissioner, 226 F. 2d 798 (C.A. 9, 1955), reversing a Memorandum Opinion of this Court, there was involved a contract for rental payments extending over a period of 67 years and 8 months. Only a nominal sum of $10 was to be paid for ownership of the "rental" property if an option to purchase included in the contract was exercised. In Haggard v. Commissioner, supra, the Ninth Circuit found that the lessee therein would have sustained a loss equal to rent paid and the cost of the option (as opposed to the option price) if he failed to exercise said option. There, the rental *40 payments were more than two times the property's fair rental value. On the basis of the foregoing, we conclude that there was no basis at the time the agreement was executed to infer perforce as we must that a sale would be consummated after 25 years. Thus, we hold that the agreement in issue is a lease. We must now consider the nature of the $25,000 payment (hereinafter referred to as the payment) made by lessee to the Holzwarths upon execution of the lease. The payment was designated by the lease as "consideration for entering lease" and "not a deposit for rent." In the event that Lindsay exercised the purchase option, the purchase price would be reduced by the amount of the payment. If lessee failed to exercise the option, the payment would be applied against rent for the last 5 1/4 years of the term. If the payment were made merely as rent at the beginning of the lease, though for the final period thereof, it would be taxable as rental income at the time the Holzwarths received it. Gilken Corporation, 10 T.C. 445 (1948), affd. 176 F. 2d 141 (C.A. 6, 1949). Furthermore, if the payment were made solely as consideration for entering the lease, it *41 also would be taxable as income when received - the reason being that such amount constitutes additional payment for use of the property and is therefore the equivalent of rent. However, the lease in issue also provides that the payment is to be applied against the purchase price if the option is exercised. Thus, the payment also serves, in a sense, a deposit function. It is true that the Holzwarths did not know whether the payment would be applied ultimately (1) for rent or (2) as part of the purchase price. However, the Holzwarths were able to expend the entire amount of the payment when received for their own benefit and needs. Moreover, the payment is nowhere by the lease required to be returned to the lessee whether or not the option is exercised. [6]
Therefore, we believe that the payment was made primarily as consideration for entering the lease and, hence, see no reasonable justification for deferring taxation of the payment for 25 years. The facts as to the payment parallel those *42 presented in Gilken Corporation, supra, wherein certain payments made pursuant to a lease were to be (1) held by the lessor as security for performance, (2) held by the lessor for rent on the final period of the lease, or (3) held by the lessor and applied toward the purchase price if an option granted in the lease was execised. There, the Court held that the payment was to be taxed as rent in the year received. See also, Estate of Mary G. Gordon, supra. Petitioners' alternative contentions that the payment constituted (1) a right to a condemnation award "in-effect" for the house or the alley, (2) a loan, [7] or (3) part of a nontaxable exchange are without basis in law, are contrary to the facts, and do not merit any discussion herein. Decisions will be entered for the respondent. Footnotes
1. The size of such portion is undisclosed by the record.↩
2. Ordinance No. 228 classified the Holzwarth property as commercial property.↩
3. Including, for present purposes, (1) $4,800 per year, (2) the $25,000 payment made at the lease's execution, and (3) the lessee's obligation to pay real estate tax and insurance on the property. ↩
4. Mary Holzwarth's testimony regarding the size, location, and rental of a neighboring property is entirely too vague to be of value in establishing the fair rental value of the Holzwarth property.↩
5. Clause 26 of the lease states that the purchase price($110,000) was to be reduced by $30,000 (alleged interest at 5 percent per annum on $25,000 from June 1, 1960, to June 1, 1984). The arrangement in issue has no characteristics of a loan and clause 26 does not contribute any. The Holzwarths would never actually have to account for interest nor would they have to return the principal sum (see footnote 6, infra). See Gilken Corporation, 10 T.C. 445(1948), affd. 176 F. 2d 141↩ (C.A. 6, 1949). Thus, we believe that the option purchase price was, more realistically, $80,000.
6. According to the lease, the payment would be returned only if the lessors 90 days after execution of the lease elected to cancel the lease. The Holzwarths never made such election.↩
7. See footnote 5, supra.↩