OPAL MENNELLA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mennella v. Commissioner
Docket No. 22611-81.
United States Tax Court
T.C. Memo 1985-594; 1985 Tax Ct. Memo LEXIS 37; 51 T.C.M. (CCH) 57; T.C.M. (RIA) 85594; December 9, 1985. Anthony F. Mercurio and Joseph A. Porto, for the petitioner. Sheri Wilcox, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $76,696.96 in petitioner's 1975 Federal income tax. The issue for decision is whether a contract executed in 1975 effected a sale of a nursing home or a lease with an option to purchase, or, in the alternative, whether the transaction was effected in 1974. FINDINGS OF FACT Certain facts are deemed stipulated pursuant to Rule 91(f)(3), Tax Court Rules of Practice and Procedure.[1] The deemed stipulations and corresponding exhibits are incorporated herein by this reference. *38 At the time her petition was filed, petitioner Opal Mennella resided in Brenham, Texas. On August 18, 1976, petitioner filed her individual 1975 Federal income tax return with the Internal Revenue Service Center in Austin, Texas. Petitioner was married to Philip A. Mennella (Mr. Mennella) until their divorce on January 7, 1974. In conjunction with the divorce, petitioner and Mr. Mennella entered into a Property Settlement Agreement which provided that Mr. Mennella would operate and manage certain community property, and petitioner would receive $3,000 per month plus one-half of year-end profits in excess of $72,000, if any. Among the assets in the agreement was the Sweetbriar Nursing Home in Georgetown, Texas (Sweetbriar). On February 10, 1975, petitioner and Mr. Mennella executed an agreement with their daughter, Candyce Ann Hodge, and her husband, David Michael Hodge (the Hodges), who had managed Sweetbriar for several years.The contract was entitled "Management Contract: Philip A. Mennella, Et Al with Michael Hodge, Et Al" and provided in pertinent part, as follows: 3. That the effective date of this Management Agreement shall be February 1, 1975, at which time the said *39 David Michael Hodge and Candyce Ann Hodge Shall take over and assume all responsibilities of the Sweetbriar Nursing Home of Georgetown, Texas. The Managers shall have the sole control of managing said home and shall see that all bills are paid, including utilities, taxes, salaries, wages, supplies and any other indebtedness against the facility, including real estate indebtedness or any other obligation of the Sweetbriar Nursing Home in Georgetown, Texas, a list of which notes and obligations shall be furnished with the execution of this contract. That the Managers will take over all obligations as above mentioned and they shall also take over and receive all Accounts Receivable and all collections to be made by said nursing home. * * * 5. As compensation for this Management Agreement, the Managers are to reserve and retain all profits from said business after the payment of all bills and after the payment of the sums due to the Owners, and the Managers shall be entitled to retain and reserve all other profits as their salary for managing said facilities, and the Managers agree to furnish the Owners monthly reports which shall show the status of the business and which shall *40 also indicate that all debts and liabilities of the business have been paid. The agreement nowhere specified a purchase price but provided, nevertheless, that the Hodges "shall pay the sum of $2,000.00 per month to * * * [petitioner], which sum shall be credited toward the purchase price for the transfer of all Owner's equity, provided the option herein provided is exercised and provided that Managers comply with the other terms of the agreement." After 50 months, petitioner and Mr. Mennella would execute the necessary deeds, bills of sale, and other instruments necessary to transfer the equity and assets, and the Hodges would execute a secured noninterest bearing $30,000 note payable to petitioner in monthly installments of $500. In its typewritten form, the agreement provided that the $30,000 note was payable to both petitioner and Mr. Mennella. Mr. Mennella's name is scratched out, with the change apparently initialed by the parties to the contract. This "Management Contract" is almost identical to another document executed by the same parties on November 25, 1974. The only notable distinctions in the terms of the two agreements are that the effective date of the other *41 document is December 1, 1974, and that Mr. Mennella's name is not scratched out in the other document. On July 8, 1975, petitioner and Mr. Mennella entered into an agreement to partition certain assets being held as community property. On July 12, 1975, petitioner and Mr. Mennella entered into a second partition agreement which stated that it was executed "in lieu of the agreement dated July 8, 1975." Neither agreement provided for the disposition of Sweetbriar, though each disposed of all the other assets identified in the Property Settlement Agreement. On July 6, 1978, the Hodges entered into an agreement to change their respective interests and ownership rights in Sweetbriar. In consideration for Mr. Hodge's "valuable managerial services" and Mrs. Hodge's love for him, she transferred to him "that portion of the fee simple absolute ownership title in and to said nursing home which will give * * * [Mr. Hodge] an absolute fifty percent (50%) ownership * * *." Also, the contract provided that the "Management Contract" dated February 10, 1975 governed the control, management, and ownership of Sweetbriar. On February 22, 1980, and as provided in the 1975 "Management Contract, *42 " petitioner and Mr. Mennella executed a "Warranty Deed with Vendor's Lien" to convey Sweetbriar to the Hodges. The deed contained the following paragraph: This conveyance is expressly made and accepted subject to all valid and subsisting easements, restrictions, reservations, covenants and conditions relating to the property described in Exhibit A to the extent that the same are valid and enforceable against said property, as same are shown by instruments filed for record in the office of the County Clerk of Williamson County, and as same appear in that certain agreement executed between the grantors hereof and David Michael and Candyce Ann Hodge dated February 10, 1975, which is attached hereto as Exhibit B. On schedule C of her 1975 Federal income tax return, petitioner reported a net profit from the operation of Sweetbriar. On her 1976 Federal income tax return, petitioner reported income from the installment sale of Sweetbriar to the Hodges on February 1, 1975. In 1979, respondent began an examination of petitioner's 1975 tax liability and subsequently determined adjustments based on a sale of Sweetbriar in 1975. Petitioner's Certified Public Accountant (C.P.A.) advised *43 respondent's agent that petitioner agreed with the adjustments but that she had also suffered an embezzlement loss from her exhusband in 1975; he further advised the agent that if the loss was not allowed, petitioner would appeal the case. The agent would not consider the embezzlement loss issue and prepared a statement of Income Tax Examination Changes reflecting only the 1975 sale of Sweetbriar. Petitioner filed an amended 1975 income tax return reflecting both the sale of Sweetbriar and the embezzlement loss and attached thereto a copy of respondent's statement of changes. The return was forwarded to the examining agent, who disallowed the loss because of inadequate substantiation. Petitioner, through her C.P.A., appealed the decision in a letter stating that petitioner agreed with the examination report except for the disallowance of the loss, and that she requested an appeal to present evidence to support her claim. Attached to the letter was an affidavit signed by petitioner under penalties of perjury stating that the contents of the letter are "true, correct, and complete." The administrative appeal was unsuccessful, and respondent issued a notice of deficiency based on *44 a sale of Sweetbriar in 1975. Specifically, gross receipts from the operation of Sweetbriar were reduced by an amount representing payments towards the purchase price, depreciation expenses were denied, and gain from the installment sale of Sweetbriar was computed. OPINION Petitioner now contends that no sale of Sweetbriar occurred in 1975. In her petition, she also alleged that she was entitled to deduct a 1975 theft loss in the amount of $108,809 based on an alleged embezzlement by her ex-husband. On December 27, 1984, respondent filed a Motion for Partial Summary Judgment on the 1975 theft loss issue. In support of the Motion, respondent (1) produced petitioner's state court petition against her exhusband, which states that petitioner did not become aware of the claimed embezzlement until January 1981; (2) noted that under section 165(e), theft losses are deductible only in the year the loss is discovered; and (3) asserted that therefore no theft loss could be claimed by petitioner in 1975. Petitioner did not file a response and tendered no evidence on that issue during trial. Partial summary judgment is therefore appropriate, and petitioner is not entitled to any deduction *45 for a theft loss in 1975. The remaining issue is whether the 1975 "Management Contract" effected a sale or a lease with an option to buy. This determination generally depends upon which party possesses the "benefits and burdens" of ownership. Harmston v. Commissioner,61 T.C. 216, 228 (1973), affd. 528 F.2d 55 (9th Cir. 1976).This fact must be ascertained from the parties' intention as evidenced by the written agreements read in light of the attending facts and circumstances. Haggard v. Commissioner,24 T.C. 1124, 1129 (1955), affd. 241 F.2d 288 (9th Cir. 1956). The burden is on petitioner to prove that the 1975 transaction did not effect a sale of Sweetbriar. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Some of the factors courts consider to determine whether a sale has occurred are: (1) whether legal title passes, (2) how the parties treat the transaction, (3) whether an equity was acquired in the property, (4) whether the contract creates a present obligation on the seller to execute and deliver a deed and a present obligation on the purchaser *46 to make payment, (5) whether the right of possession is vested in the purchaser, (6) which party pays the property taxes, (7) which party bears the risk of loss or damage to the property, and (8) which party receives the profits from the operation and sale of the property. Grodt & McKay Realty, Inc. v. Commissioner,77 T.C. 1221, 1237-1238 (1981); Harmston v. Commissioner,61 T.C. at 228-231. [2] Applying these criteria to the facts herein, we conclude that petitioner sold Sweetbriar in 1975. The Hodges, who had managed Sweetbriar for several years before 1975, took over "sole control" of management in 1975. They assumed all existing mortgages and obligations on Sweetbriar and were responsible for paying all bills, including taxes. After paying the bills and installments due petitioner, they were entitled to retain all remaining profits. The terms of the contract created a present obligation on petitioner and Mr. Mennella to execute and deliver a deed and a present obligation on the Hodges to make payments. See Wiseman v. Scruggs,281 F.2d 900, 902 (10th Cir. 1960). *47 Also, because they assumed the mortgage and commenced payments that would be credited towards the purchase price, they were acquiring an equity in Sweetbriar. See Haggard v. Commissioner,24 T.C. at 1128. Title was not transferred in 1975; however, as stated in Harmston, "where the purchaser takes possession, pays the real estate taxes, and assumes the burdens and benefits of ownership, such a contract can be operated merely as a security device and the purchaser will be regarded as the owner, notwithstanding that legal title remains in the seller." 61 T.C. at 231. With the exception of petitioner's original income tax return for 1975, petitioner and the other parties uniformly treated the transaction as a sale in 1975. Petitioner reported the transaction as a sale in 1975 on her amended 1975 income tax return and her 1976 income tax return. During the course of the examination of petitioner's 1975 tax liability, she even communicated to respondent that she agreed with his determination that Sweetbriar was sold in 1975. Sweetbriar is noticeably absent from the two partition agreements executed in July 1975 between petitioner and Mr. Mennella *48 that disposed of every other property listed in the property settlement agreement between them. Further, the Hodges realigned between themselves their "ownership" interests in Sweetbriar in an agreement executed on July 6, 1978, and reaffirmed in 1980. At trial, petitioner introduced the document executed on November 25, 1974, which is almost identical in terms with the February 10, 1975, "Management Contract". Petitioner posits that the 1974 agreement commenced the transaction and the 1975 agreement merely modified it. In his opening statement, counsel for petitioner argued that the 1974 agreement was a lease with an option to purchase. On direct examination, petitioner testified that the 1974 agreement was a lease with an option to purchase.In her post-trial brief, however, petitioner argues that the 1974 agreement was a contract of sale. She offers no explanation for the inconsistency. The 1974 agreement appears valid on its face, but the record fails to support categorization of it as an effective transfer, given either of petitioner's inconsistent positions. Had it taken effect, the Hodges would have assumed the liabilities of Sweetbriar and commenced payments in 1974. *49 The record is devoid of such evidence. At trial, petitioner testified that she received a payment in January before the 1975 agreement; however, she was unable to produce any bank statement, deposit slip, or other corroborating evidence. Without corroboration, petitioner's self-serving declaration is unconvincing. Unlike petitioner's modified partition agreement dated July 12, 1975, which stated that it was executed "in lieu of" the earlier agreement, the 1975 agreement, which is complete on its face, makes no reference to the 1974 agreement. The Hodges' 1978 agreement, reaffirmed in 1980, that realigned their ownership interests in Sweetbriar referred only to the 1975 agreement and a November 1975 addendum. The Warranty Deed, executed by petitioner and Mr. Mennella on February 22, 1980, expressly conveyed Sweetbriar subject to the 1975 agreement, and a copy of the 1975 agreement was attached to the deed. In her 1976 income tax return, her amended 1975 return, and her communications with respondent during the examination, petitioner treated the 1975 agreement as a sale without ever acknowledging the 1974 agreement. In her brief, petitioner argues that the purported 1975 modification *50 to the 1974 agreement was only to change an "incidental condition to allow Petitioner to be the sole receipient [sic] of the $30,000 Note." Were this so, we hardly understand why petitioner would draft a completely new document repeating all the other terms when a simple notation on the 1974 agreement would have accomplished the same. Further, we note that this very notation was inscribed and initialed on the 1975 agreement itself. Thus, we find that the 1974 agreement was never given effect. Decision will be entered for the respondent.
Footnotes
1. On January 23, 1985, respondent filed a motion to require petitioner to show cause why the facts and evidence set forth in respondent's proposed stipulation of facts, unanswered and uncontested by petitioner, should not be accepted as established for purposes of this case. Rule 91(f), Tax Court Rules of Practice and Procedure.↩ The motion was granted, petitioner did not respond, and the order was made absolute on February 27, 1985.
2. See Calbom v. Commissioner,T.C. Memo. 1981-95↩.