CATHLEEN M. SMITH HANDEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Handel
Docket No. 19316-90
United States Tax Court
T.C. Memo 1992-355; 1992 Tax Ct. Memo LEXIS 380; 63 T.C.M. (CCH) 3168; June 23, 1992, Filed *380 Decision will be entered for respondent. R. D. Worsley, for petitioner. Valerie N. Larson, for respondent. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1979
$ 2,682.00
$ 134.00
1980
2,859.00
143.00
1981
4,128.00
$ 206.40
50% of the   interest due
on $ 4,128.00
1982
2,391.00
120.00
50% of the   interest due
on $ 2,391.00
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioner is entitled to an investment tax credit in the amount of $ 12,060 for 1982 and (2) whether petitioner is liable for additions to tax for negligence. (The amounts in issue for the other years are the result of carrybacks from 1982.) FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated *381 in our findings by this reference. Cathleen M. Smith Handel (petitioner) resided in Rancho Penasquitos, California, at the time she filed her petition. On September 1, 1982, petitioner and Hollis R. Bowden (Bowden) signed a partnership agreement to form Newport Vending. The stated purpose of Newport Vending was to own and rent water vending machines. Petitioner held a 25-percent interest in Newport Vending. On September 1, 1982, Newport Vending entered into a purchase agreement with The Water Doctor, Inc. (Water Doctor), in which Water Doctor agreed to sell to Newport Vending 24 water vending machines (the vending machines) for $ 482,400. Pursuant to the purchase agreement, $ 4,800 was to be paid to Water Doctor at the time of the signing of the purchase agreement, and the balance was to be paid in the form of two promissory notes. Water Doctor agreed to reimburse Newport Vending $ 100 per vending machine in order to cover various charges associated with the purchase agreement. The amount owed to Newport Vending by Water Doctor was divided evenly between Bowden and petitioner. Consequently, the amount owed to petitioner by Water Doctor was $ 1,200. Water Doctor offered to *382 credit this amount to petitioner's account in lieu of her making an initial cash contribution pursuant to the purchase agreement. Petitioner accepted the offer. The credit would not be applied, however, until the promissory notes were paid in full. The first promissory note was for $ 67,560, with no interest payable until January 1, 1984, whereupon 9-percent interest would accrue on the outstanding balance of the promissory note. The second promissory note was for $ 410,040, with interest to accrue from September 1, 1982, at the rate of 9 percent. Principal and interest were due on December 31, 1989. If $ 61,506 were paid by December 31, 1989, the second promissory note would be extended to December 31, 1996. If an additional $ 61,506 were paid by December 31, 1996, the second promissory note would be extended to December 31, 1999. No interim schedule of payments on either promissory note was instituted. All outstanding note balances were to be deemed fully paid in the event that Water Doctor assigned the contract for the benefit of unsecured creditors or was adjudged a bankrupt. The purchase agreement further provided: 3. Seller [Water Doctor] agrees to place subject *383 machines on rental locations * * * * * * 5. Purchaser [Newport Vending] agrees to reimburse Seller his out of pocket payments for location owner's fees estimated to be approximately 35% of gross revenues. 6. Seller agrees to furnish all necessary Management required to supervise the business of rental of Coin-Operated Water Vending Machines. The charges for management costs to the Purchaser shall be 5% of gross revenue. 7. Seller agrees to furnish all Maintenance, including labor and materials * * * necessary to maintain said equipment in working order necessary for the production of income. This would include costs to repair as a result of any vandalism. The charges for Maintenance costs to the Purchaser shall be 10% of gross revenues. 8. Seller agrees to furnish all Accounting and Legal services required to support the Administrative functions. The charge for Accounting & Legal, to the Purchaser shall be 5% of gross revenues. 9. Seller agrees to develop Insurance and Tax reduction programs to protect Purchaser against property loss, liability claims and minimization of property and sales taxes. The charge for Insurance and Taxes (not including State or *384 Federal), to the Purchaser shall be Seller's out of pocket costs relative to these items of cost, estimated to not exceed 3% of gross revenue. In the event that Water Doctor was unable to place the vending machines on rental locations on or prior to December 1, 1982, Water Doctor agreed to pay to Newport Vending an amount that was to be an equivalent of the lost rental fees. Water Doctor was to apply the profits from the rental of the vending machines against the balance due on the promissory notes. Title to the vending machines was to remain with Water Doctor until the promissory notes, including interest, were paid in full. At that time, and upon Newport Vending's payment to Water Doctor of $ 1 per vending machine, title to the vending machines was to pass to Newport Vending. Newport Vending could then operate the vending machines for its own account or negotiate another agreement with Water Doctor. Newport Vending and Water Doctor also entered into a security agreement that gave Water Doctor a security interest in, and a general lien upon, the vending machines. In 1982, Water Doctor credited profits from the rental of the vending machines against the promissory notes in *385 the amount of $ 2,400. Petitioner calculated an investment tax credit with respect to the vending machines of $ 12,060 on her Federal income tax return for 1982. Petitioner claimed $ 2,391 of the investment tax credit on her Federal income tax return for 1982 and carried back to 1979, 1980, and 1981 the unused portion of the credit. For the years 1983 through 1990, profits from the rental of the vending machines were credited against the promissory notes. Subsequent to 1982, petitioner made cash payments with respect to the promissory notes. In the notice of deficiency, respondent disallowed the investment tax credit because petitioner had not "established the basis * * * [of nor] acquired and placed into service during the taxable year any qualifying property". OPINION Section 46 provided for an investment tax credit with respect to any taxable year for the applicable percentage of the basis of each new section 38 property placed in service by the taxpayer during such taxable year. The dispute between the parties can be resolved by the determination of whether Newport Vending became the owner of the vending machines for Federal tax purposes in 1982. Respondent contends that *386 petitioner is not entitled to the investment tax credit because Newport Vending was not the actual owner of the vending machines, but, rather, Water Doctor retained ownership of the vending machines. Petitioner contends that respondent has raised a new issue in her opening brief that should not be considered by the Court or that, at least, the burden of proof is on respondent. In the notice of deficiency, respondent determined that petitioner was not entitled to an investment tax credit with respect to the vending machines because petitioner had not "established the basis * * * [of nor] acquired and placed into service during the taxable year any qualifying property". At trial, respondent's counsel narrowed the issue of whether petitioner was entitled to the investment tax credit by explaining that she would attempt to prove "that the Water Doctor is the actual owner of these vending machines." Respondent argues that no sale took place because Water Doctor retained the benefits and burdens of ownership of the vending machines. "Proceeding from the broad to the specific, as the respondent has in this case, does not destroy the presumptive correctness of the respondent's determination *387 of deficiency and shift the burden of proof to the respondent, much less bar * * * [those] contentions from consideration." Big "D" Development Corp. v. Commissioner, T.C. Memo. 1971-148, affd. per curiam 453 F.2d 1365 (5th Cir. 1972). We therefore consider whether Newport Vending became the owner of the vending machines for Federal tax purposes in 1982. Events occurring subsequent to 1982 do not affect our determination. Regardless of the burden of proof on this issue, the preponderance of the evidence favors respondent's position. Petitioner argues that the existence of the purchase agreement and security agreement indicates that the transaction in this case was a sale on credit in which the seller retained a security interest in the goods sold. Formal documents, however, do not control for "tax purposes when the objective economic realities are to the contrary." Frank Lyon Co. v. United States, 435 U.S. 561, 573 (1978). To determine whether a sale has occurred, the substance of the transaction, rather than its form, governs. Id. at 572-573. In Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221 (1981), *388 we stated: The term "sale" is given its ordinary meaning for Federal income tax purposes and is generally defined as a transfer of property for money or a promise to pay money. Commissioner v. Brown, 380 U.S. 563, 570-571 (1965). The key to deciding whether * * * [a taxpayer's transaction is a sale] is to determine whether the benefits and burdens of ownership have passed * * * to * * * [the taxpayer]. This is a question of fact which must be ascertained from the intention of the parties as evidenced by the written agreements read in light of the attending facts and circumstances. Haggard v. Commissioner, 24 T.C. 1124, 1129 (1955), affd. 241 F.2d 288 (9th Cir. 1956). * * * [Grodt & McKay Realty, Inc. v. Commissioner, supra at 1237; fn. ref. omitted.] Among the factors to be considered are: (1) Whether legal title passes; (2) how the parties treat the transaction; (3) whether an equity was acquired in the property; (4) whether the contract creates a present obligation on the seller to execute and deliver a deed and a present obligation on the purchaser to make payments; (5) whether the right *389 of possession is vested in the purchaser; (6) which party pays the property taxes; (7) which party bears the risk of loss or damage to the property; and (8) which party receives the profits from the operation and sale of the property. * * * [Id. at 1237-1238; citations omitted.] Not all of the factors are relevant in every case, and the weight to be given to any one factor may vary depending on the circumstances. We will consider the factors that are relevant to petitioner's transaction. Title to the vending machines would not pass to Newport Vending until the promissory notes were paid in full. The first promissory note had no due date, and the second promissory note did not have to be paid in full until 17 years after the parties entered into the transaction. Legal title, therefore, would not pass to Newport Vending until an undetermined time in the future. The terms of the purchase agreement suggest that the parties did not treat the transaction as a sale. In the event that Water Doctor assigned the contract for the benefit of unsecured creditors or was adjudged a bankrupt, the promissory notes would be deemed fully paid. Further, if Water Doctor were *390 unable to place the vending machines in rental locations, Water Doctor would pay to Newport Vending an amount that was to be an equivalent of the lost rental fees. In a bona fide sale, Newport Vending would have had the burden of paying for the vending machines in any event and would have borne the risk if they were unable to be placed on rental locations. Newport Vending was to pay for the vending machines through an initial down payment and two promissory notes. Petitioner's portion of the $ 4,800 down payment was to be paid from moneys owed to her by Water Doctor but would be credited to her account only after the promissory notes were paid in full. The first required payment on either of the promissory notes was not due until 7 years after the parties entered into the transaction. The contract therefore created no present obligation of Newport Vending to make payments for the vending machines. Water Doctor was required to develop an insurance program to protect Newport Vending from property loss and liability claims. Water Doctor was also required to manage the rental of the vending machines, maintain them in working condition, and furnish necessary accounting and legal *391 services. Each of these services provided by Water Doctor is indicative of its ownership of the vending machines. Although Water Doctor was to receive fees for the provision of these services, the fees were to be paid out of gross revenues from the rental of the vending machines. The fees were therefore directly related to Water Doctor's maintenance and operation of the vending machines. Water Doctor, in effect, owned the vending machines and rented them for its own account. Payments on the promissory notes were to be made out of the profits from the rental of the vending machines. Only after the notes were paid in full could Newport Vending operate the vending machines for its own account and receive the profits therefrom. The vending machines were therefore to be rented for the benefit of Water Doctor until the promissory notes were paid. Cf. Grodt & McKay Realty, Inc. v. Commissioner, supra at 1242-1243 (holding that the possibility of a purchaser's receiving speculative future profits is inadequate to support the finding of a sale for Federal tax purposes). Based on the foregoing, we conclude that Newport Vending did not acquire the benefits and *392 burdens of ownership of the vending machines in 1982. Because there was no sale of, and Newport Vending was not the owner of, the vending machines for Federal tax purposes, petitioner is not entitled to an investment tax credit based thereon. Having reached this conclusion, we need not address the other arguments set forth by the parties on this issue. Section 6653(a) as in effect in 1979 and 1980 and section 6653(a)(1) and (2) as in effect in 1981 and 1982 provide for additions to tax if an underpayment is due to negligence. Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under similar circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of proof. Rule 142(a). Petitioner has presented neither argument nor evidence to negate respondent's determination. Petitioner has not met her burden of proof and is therefore liable for the additions to tax for negligence. To reflect the foregoing, Decision will be entered for respondent.